UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DOROTHY M. RICHARDSON,

       Plaintiff,

vs.                                                     Case No.  3:10-cv-935-MCR

MICHAEL J. ASTRUE, Commissioner of the
Social Security Administration,

       Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits ("DIB") on July 9, 2007, alleging an inability to work since March 15, 2007. (Tr. 138-42). The Social Security Administration ("SSA") denied the application initially and upon reconsideration. (Tr. 69-75, 83-84). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on January 21, 2010. (Tr. 11-25). On April 23, 2010, ALJ Davenport issued a decision finding Plaintiff not disabled. Id. Plaintiff requested review of the ALJ's decision by the Appeals Council, but the request was

_____

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 12).

1

denied. (Tr. 1-6). Plaintiff timely filed her Complaint in the U.S. District Court on October 12, 2010. (Doc. 1).

## II. NATURE OF DISABILITY CLAIM

### A. Basis of Claimed Disability

Plaintiff claims to be disabled since March 15, 2007 due to a spinal injury, shoulder injury, and psychiatric impairments. (Doc 14, p. 3).

### B. Summary of Evidence Before the ALJ

Plaintiff was 47 years of age on the date ALJ Davenport's decision was issued. (Tr. 37). She has a high school education and past relevant work experience as a motel cleaner and laundry worker. (Tr. 37, 51, 60). Plaintiff testified her high school degree was "special ed . . . like learning kindergarten all over again," but she could read and write well. (Tr. 52-53, 396, 404). Her medical history is detailed in the record and will be summarized here.

Plaintiff was a housekeeper at St. Vincent's Medical Center. (Tr. 146-48). She injured her cervical spine and shoulder while working there. (Doc. 14, p. 3). After the accident, Plaintiff saw Dr. Ero, an orthopedist, who diagnosed Plaintiff with degenerative disc disease with disc herniation. (Tr. 253). On August 11, 2005, Dr. Ero fused Plaintiff's C5-6 and C6-7 discs. Id. Dr. Ero placed Plaintiff on "light-duty"[2] restrictions (Tr. 659), and Plaintiff was able to return to work at St. Vincent's. (Tr. 38).

_____

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [one] must have the ability to do substantially all of these activities." 20 CFR § 404.1567(b).

In September 2006, Plaintiff sustained her second cervical/shoulder injury at work.  (Tr. 38, 654).  She was referred to physical therapy, but did not regularly attend.  (Tr. 654).  Plaintiff was terminated from St. Vincent's on March 15, 2007, because St. Vincent's could no longer accommodate her condition.  (Tr. 158-59).  Plaintiff lost her worker's compensation case due to an insufficient showing of any connection between her neck injury and work place accident.  (Tr. 42).

Diagnostic testing in July 2007 showed disc protrusions above the C5-7 fusion.  (Tr. 652).  In October 2007, Dr. Ero diagnosed adjacent segment disease.  (Tr. 468).  In February 2008, Dr. Ero opined Plaintiff could engage in light-duty work for thirty-one to forty hours a week and could lift up to twenty-five pounds.  (Tr. 467, 470).

In March 2007, Dr. Karnani, Plaintiff's general physician, opined Plaintiff was disabled based on her back pain and depression.  (Tr. 480).  Dr. Karnani opined Plaintiff should lift no more than 10 pounds (Tr. 11), but Dr. Karnani did not reject Dr. Ero's conclusion that Plaintiff was capable of light-duty work and even deferred to Dr. Ero as the physician to be contacted for information regarding Plaintiff's condition.  (Tr. 409).

In October 2007, Dr. Gnomic, a consultative examiner, opined Plaintiff only had "mild to moderate" limitations in prolonged sitting, standing, walking, climbing, and heavy lifting.  (Tr. 427).  During his examination of Plaintiff, Dr. Gnomic noted Plaintiff had decreased ranges of motion in the cervical and lumbar spine, but was able to squat, sit, and stand normally.  (Tr. 424-30).  Plaintiff also had intact finger and hand dexterity and grip strength.  Id.

In November 2007, Dr. Cater, a non-examining consultative doctor, suggested Plaintiff could lift 20 pounds occasionally.  (Tr. 453).  In April 2008, Dr. DeMiranda,

another non-examining consultative doctor, opined Plaintiff could perform light-duty work. (Tr. 842-48). In June 2008, Dr. Jaminal, another of Plaintiff's treating physicians, suggested Plaintiff had no "limitation of motion of any joint" and "exaggerated/feigned tenderness" in her back during examination. (Tr. 942). An x-ray of Plaintiff's shoulder, examined by Dr. Jaminal, was normal in July 2008. (Tr. 947).

In October 2008, Dr. Smith, a consultative examiner, opined Plaintiff sustained a partial infraspinatous tendon tear in her right shoulder that had been overlooked by other physicians. (Tr. 858, 928, Doc. 14, p. 4). Dr. Smith did not give Plaintiff a disability rating, nor did he schedule a follow-up appointment. (Tr. 856-58).

In September 2009, Dr. Dehgan, a consultative examiner, opined Plaintiff had normal spinal alignment, slightly decreased range of motion, and normal strength of the upper and lower extremities. (Tr. 859-61). Dr. Dehgan reviewed the records of Dr. Gnomic, Dr. Smith, and Dr. Ero and opined Plaintiff could perform a full range of light-duty work. (Tr. 861). Dr. Dehgan suggested Plaintiff had no gross physical or neurological impairment and could return to work with no heavy lifting. Id.

Plaintiff also suffered mental and psychiatric impairments. She was a victim of sexual abuse as a child and rape as an adult. (Tr. 879). Plaintiff began treatment for depression in the 1980s. (Tr. 882). She was hospitalized for suicidal thoughts and depression on several occasions. (Tr. 243, 249, 419, 882). Plaintiff responded positively to depression medication, but did not consistently take the prescribed amount. (Tr. 287, 325, 335, 478, 839).

In October 2007, Dr. Walls, a consultative examiner, described Plaintiff as "guarded." (Tr. 423). Dr. Walls noted Plaintiff was capable of understanding and

following simple instructions and directions.  (Tr. 422).  Dr. Walls suggested Plaintiff was capable of performing simple tasks independently, maintaining attention and concentration for simple tasks, making appropriate routine decisions, and interacting appropriately with others.  Id.  Dr. Walls further suggested Plaintiff was not able to routinely attend to a schedule because of chronic physical pain and mental distress, that she had difficulty learning new tasks, and had difficulty dealing with stress.  (Tr. 422).

In February 2008, Dr. Harris, a consultative examiner, opined Plaintiff suffered from a major depressive disorder.  (Tr. 835).  Dr. Harris opined Plaintiff would have moderate limitations understanding and remembering detailed instructions, carrying out detailed instructions, maintaining focus, concentrating for extended periods, and accepting criticisms from supervisors.  (Tr. 837-38).  In June 2008, Plaintiff denied any depression, anxiety, or memory loss.  (Tr. 945).

In October 2009, Dr. Knox, another consultative examiner, opined Plaintiff suffered from major depression as well as post-traumatic stress disorder.  (Tr. 882).  Dr. Knox observed Plaintiff did not appear "overly guarded."  (Tr. 881).  Dr. Knox opined Plaintiff had moderate impairments in her ability to interact appropriately with the public and coworkers and marked impairments in her ability to respond appropriately to usual work situations and changes in routine work settings.  (Tr. 885).

C.    **Plaintiff's Testimony at the Hearing**

Plaintiff's hearing before ALJ Davenport was on January 21, 2010.  (Tr. 31-65). At this hearing, Plaintiff testified pain and stress prevented her from working.  (Tr. 41). As recently as July 2009, Plaintiff visited the Emergency Room for neck pain.  (Tr. 40).

Plaintiff suggested she "hurt all[ ] over" and became depressed when her nerves acted up. (Tr. 41). She testified that during the day she did "most hardly nothing" but, when asked about her previous day, suggested she took a walk and distributed information about the Bible. (Tr. 45). She attended church twice a week and attempted to read the Bible on her own. (Tr. 46). She did not have a driver's license and did not know how to drive. (Tr. 54-55).

Plaintiff suggested she struggled with the death of her mother, with whom she never had a close relationship. (Tr. 47-48). She also struggled with her childhood molestation and recent rape. (Tr. 48). Plaintiff admitted she considered suicide several times and was Baker Acted into the hospital several times as well. (Tr. 58). She testified she never sought mental counseling for these matters, other than from her "spiritual mother." (Tr. 49). Plaintiff cooked for herself, did her own housekeeping, cleaned her own laundry, and went shopping with her "spiritual mother." (Tr. 49-50). Plaintiff also relied on her "spiritual mother" to make her schedule and assist in financial matters. (Tr. 54). Plaintiff testified she was taking Tramadol, Darvocet, Lexapro, Lortab, Flexeril, Nexium, and Motrin. (Tr. 51).

### D.    Summary of ALJ Davenport's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in a substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve (12) months. 42 U.S.C. §§ 416(i)(1), 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 404.1520. First, if a claimant is working at a substantial gainful activity,

she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limits her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011.  (Tr. 13).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date, March 15, 2007.  <u>Id.</u>  At step two, the ALJ found Plaintiff had the following severe impairments: "status post two cervical fusions at C5-C7 with subsequent segment disease at C4-C5; partial right shoulder tendon injury; [and] depression."  <u>Id.</u>  The ALJ  found Plaintiff's other alleged impairments were nonsevere, and "[had] been successfully treated long before the required 12-month duration or [had] no more than minimally limited [Plaintiff's] ability to perform one or more basic work activities."  (Tr. 13-14).

At step three, the ALJ stated "the claimant does not have an impairment or

combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (Tr. 14). The ALJ found Plaintiff's "affective disorder cause[d] mild restrictions on her activities of daily living and social functioning" and "moderate limitations in maintaining concentration, persistence or pace." Id. The ALJ recognized "no greater limitations in any of the three aforementioned areas [were] warranted as the records also demonstrate[d] that [Plaintiff] realized improvement in functioning when she was compliant with medication and treatment visits." Id. The ALJ further found Plaintiff's testimony and daily activities were "indicative of [Plaintiff's] higher social and cognitive functioning capability in spite of her alleged symptoms and/or limitations." (Tr. 14-15). With respect to Plaintiff's RFC, ALJ Davenport found Plaintiff was able to:

> Lift and carry up to 20 pounds occasionally. She was able to stand for 6 hours and walk for 4 hours without the use of a cane. She could only occasionally push/pull with the hands but otherwise could use her hands and feet frequently in all other areas. She would need simple, one-to-two step jobs, with occasional contact with coworkers and supervisors and limited amount of changes.

(Tr. 15). In making this determination, the ALJ found Plaintiff's impairments could reasonably be expected to produce her alleged symptoms. (Tr. 17). However, the ALJ found Plaintiff's assertions "concerning the intensity, persistence, and limiting effects of the alleged symptoms [were] not credible to the extent they [were] inconsistent with the residual functional capacity assessment." Id.

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work as motel cleaner or laundry worker. (Tr. 24). However, "considering [Plaintiff's] age, education, work experience and residual functional capacity, there [were] jobs that

exist[ed] in significant numbers in the national economy that [Plaintiff] [could] perform."
Id. As such, the ALJ found Plaintiff was not disabled within the meaning of the Social
Security Act at any date from March 15, 2007 through April 23, 2010. (Tr. 25).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ
applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th
Cir. 1988), and whether the findings are supported by substantial evidence. Richardson
v. Perales, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are
conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial
evidence is more than a scintilla – i.e., the evidence must do more than merely create a
suspicion of the existence of a fact, and must include such relevant evidence as a
reasonable person would accept as adequate to support the conclusion. Foote v.
Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Richardson, 402 U.S. at 401 and
Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982)).

Where the Commissioner's decision is supported by substantial evidence, the
district court will affirm, even if the reviewer would have reached a contrary result as
finder of fact, and even if the reviewer finds that the evidence preponderates against the
Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);
Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view
the evidence as a whole, taking into account evidence favorable as well as unfavorable
to the decision. Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## B.    Issues on Appeal

Plaintiff argues the Commissioner's decision is not based on substantial evidence.  Plaintiff's brief raises two main arguments[3] regarding alleged errors committed by the ALJ.  Specifically, Plaintiff argues the ALJ failed to properly weigh the opinions of Dr. Ero and Dr. Karnani.  Plaintiff also argues the ALJ failed to present a complete hypothetical to the vocational expert.  The Commissioner responds that the ALJ properly considered the opinions of Plaintiff's physicians and properly determined Plaintiff was capable of performing work as an assembler, hand packager, and ticket taker.

---

[3] Plaintiff's brief appears to raise more legal issues.  For example, on the second page of her brief, Plaintiff also claims the ALJ erred by failing to consider: "the complete opinions of Plaintiff's treating and/or examining physicians at Shands Hospital, St. Vincent's Hospital"; and "the totality of plaintiff's testimony."  (Doc. 14, p.2).  However, these claims are not discussed again in the brief and therefore, no legal authority is provided to support them.  This is not sufficient and the Court will not engage in speculation as to Plaintiff's arguments regarding these issues.  See Outlaw v. Barnhart, 197 F.App'x. 825, 828 n.3 (11th Cir. 2006) (plaintiff waived issue regarding physical exertional impairments despite listing issue in brief where plaintiff "did not elaborate on this claim or provide authority about this claim") (citing Cheffer v. Reno, 55 F.3d 1517, 1519 n. 1 (11th Cir. 1995) (concluding that issue was waived, even though party's brief listed the issue in the statement of issues, because party provided no argument on the merits of the claim)); Rowe v. Schreiber, 139 F. 3d, 1381, 1382 n. 1 (11th Cir. 1998) (noting in the absence of an argument, an issue is deemed abandoned); Callahan v. Barnhart, 186 F. Supp. 2d 1219, 1230 n. 5 (M.D. Fla. 2002) (noting that issue raised only in heading of a brief without any further elaboration or factual support is deemed waived).  Accordingly, the Court will not consider the issues not fully briefed by Plaintiff's counsel.

## 1. **Whether the ALJ properly weighed the opinions of Plaintiff's treating and examining physicians**

### a. Dr. Ero's Opinions

Plaintiff argues the ALJ erred by accepting Dr. Ero's opinions regarding Plaintiff's limitations even though Dr. Ero did not change his diagnosis between the two surgeries and failed to take into consideration Plaintiff's right shoulder tendon injury.  (Doc. 14, pp. 7-8).  After Plaintiff's first back surgery in August 2005, Dr. Ero placed Plaintiff on light-duty work restriction for four months.  (Tr. 655-63).  After Plaintiff's second work-place injury, Dr. Ero, in October 2007, again concluded Plaintiff was capable of returning to light-duty work.  (Tr. 467-70).  In February 2008, Dr. Ero saw Plaintiff for persistent neck pain, but no reference was made to Plaintiff's shoulder.  (Tr. 467).  An x-ray in July 2008 studied by Dr. Jaminal showed the shoulder to be normal.  (Tr. 947).  An MRI in October 2008 revealed to Dr. Smith a partial infraspinatus tendon injury in Plaintiff's shoulder. (Tr. 856-58).  Dr. Ero did not examine Plaintiff after this MRI, but Dr. Smith opined the injury was from the accident two years prior to Dr. Smith's examination.  (Tr. 858). Because Dr. Ero did not change Plaintiff's work restrictions during this time and because Dr. Ero did not factor into his opinion Plaintiff's tendon injury, Plaintiff suggests Dr. Ero's "unchanging opinions regarding [Plaintiff's] work status [are] illogical and [do] not constitute substantial evidence under the circumstances."  (Doc. 14, p. 12).

It is understood that "[t]he mere diagnosis [of a condition] says nothing about the severity of the condition."  <u>Higgs v. Bowen</u>, 880 F.2d 860, 863 (6th Cir. 1988).  "The [Plaintiff] bears the burden of proving [s]he is disabled, and, consequently, [s]he is responsible for producing evidence to support [her] claim."  <u>Ellison v. Barnhart</u>, 355 F.3d

1272, 1276 (11th Cir. 2003). Here, Plaintiff does not explain how the diagnosis of a partial tendon tear changes Plaintiff's ability to function.

The focus of the Court's review of Plaintiff's claim should focus on the disabling effects of the impairment rather than on a physician's specific diagnosis. In other words, the pertinent issue in determining whether an individual is disabled is not any specific diagnosis, but rather, the limitations arising from the diagnosis. See e.g. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he severity of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). Accordingly, whether Dr. Ero actually diagnosed the tendon tear has no bearing on Dr. Ero's functional assessment of Plaintiff. The ALJ acknowledged the tendon tear in her decision and noted Dr. Smith's report that Plaintiff had only some decreased range of motion in the shoulder. (Tr. 20). Moreover, Plaintiff fails to point out and the Court was not able to locate any evidence in the record of work restrictions or limitations arising from the shoulder tendon tear.

Further, Dr. Ero's assessment is not inconsistent with the record. In February 2008, Dr. Ero opined Plaintiff could engage in light duty work for thirty-one to forty hours a week. (Tr. 467). Nearly one year after Dr. Smith diagnosed the tendon tear, Dr. Dehgan opined Plaintiff could "return to work, with no heavy lifting." (Tr. 861). Similarly, Plaintiff was discharged from Baptist Medical Center - Downtown Emergency Department with light-duty work restrictions on June 16, 2009, (Tr. 987), and without any work restrictions three other times in 2009. (Tr. 976, 1000, 1022). In July 2009, Plaintiff visited the Baptist Medical Center for shoulder pain, but the discharging

12

physician suggested Plaintiff should "continue [the] light duty restrictions from [her] prior orthopedist." (Tr. 985-87). In Plaintiff's October 2009 visit to the Emergency Room, Plaintiff did not mention any shoulder pain and was discharged without any work restrictions. (Tr. 973-76). Thus, the ALJ did not err in considering Dr. Ero's determination of Plaintiff's RFC. The Court finds no reversible error in the ALJ's reliance on Dr. Ero's functional assessment.

### b. Dr. Karnani's Opinions

Plaintiff argues the ALJ erred in rejecting Dr. Karnani's 10 pound lifting restriction even though Dr. Karnani had frequent and direct contact with Plaintiff. (Doc. 14, p. 12). Treating source opinions are generally entitled to increased weight. 20 C.F.R. § 404.1527(d)(2). Specifically, if the ALJ finds a treating source's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [he/she] will give it controlling weight." Id. In fact, the opinions of a treating physician "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). The Eleventh Circuit has determined "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Phillips, 357 F.3d at 1240-41. In any event, whenever an ALJ decides to disregard the opinion of a treating physician, he or she must clearly articulate the reasons for so doing. Id. at 1241.

Here, the ALJ gave sufficient reasoning for rejecting Dr. Karnani's opinions. The ALJ noted the inconsistency between Dr. Karnani's and Dr. Ero's assessments. (Tr. 18). Dr. Karnani suggested a 10 pound limit, but Dr. Ero put Plaintiff on light duty work with the ability to lift 25 pounds. Id. This evidence erodes the strength of Dr. Karnani's opinion.

Next, the ALJ noted Dr. Karnani's deference to Dr. Ero's opinions. Id. In an October 2007 medical evaluation, Dr. Karnani directly deferred to Dr. Ero as the physician to contact for Plaintiff's condition regarding inflammatory arthritis, pain, swelling, tenderness, stiffness, motor skills, reflexes, muscle spasms, and other findings related to the spine. (Tr. 409). Dr. Karnani explicitly refrained from examining Plaintiff for range of motion, gait, grip strength, dexterity, muscle strength, sensory loss, motor loss and reflex loss. Id. The record does not include substantial evidence that bolsters Dr. Karnani's assessment of a 10 pound lifting restriction. Because substantial evidence supports the ALJ's finding that Dr. Karnani's opinions were "not bolstered by the evidence" and "evidence supported a contrary finding," the ALJ had good cause to assign Dr. Karnani's opinions less than substantial weight. Thus, the ALJ did not err in rejecting Dr. Karnani's 10 pound lifting restriction.

### 2. Whether the ALJ properly based his decision on a complete hypothetical

Plaintiff next argues the ALJ's hypothetical to the VE did not consider or include the psychiatric restrictions recommended by the three consultative examiners, Drs.

14

Knox, Harris, and Walls.[4]  (Doc. 14, p. 12).  Plaintiff also suggests the assumptions in

the ALJ's hypothetical do not accurately reflect the physical or mental condition of

Plaintiff.  (Doc. 14, p. 13).  The Commissioner responds that the ALJ's reliance on the

opinions of the mental health providers was appropriate.  (Doc. 15, pp. 10-12).

Because the ALJ's reliance on Dr. Ero and other doctors for Plaintiff's physical RFC was

discussed and deemed proper above, only Plaintiff's psychiatric condition will be

discussed here.

        This Court assumes Plaintiff would argue the ALJ should have considered Dr.

Knox's opinion that Plaintiff was depressed and had a moderate limitation in interacting

with others, as well as marked limitations in responding to changes.  Plaintiff may also

argue the ALJ should have considered Dr. Walls's opinion that Plaintiff had difficulty

attending to a schedule, learning new tasks, and dealing with stress.  Finally, Plaintiff

may rely on Dr. Harris's opinion that Plaintiff had moderate limitations as to social

functioning and maintaining pace, persistence, or concentration.

        Plaintiff is correct that case law in this circuit requires the ALJ to employ

hypothetical questions which are accurate and supportable on the record and which

include all limitations or restrictions of the particular claimant.  Wilson v. Barnhart, 284

F.3d 1219, 1227 (11th Cir. 2002); Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985).

However, an ALJ is not required to include in a hypothetical question, limitations that

are not supported by the record or limitations the ALJ properly rejected.  Bouie v.

_____

        [4] In making this suggestion, Plaintiff once again does not give specific examples or
explanations of psychiatric limitations she believes were not properly included in the
hypothetical to the VE.  The Court will assume Plaintiff's arguments from information in
Document 14 and the record.

Astrue, 226 F.App'x. 892, 894 (11th Cir. 2007) (quoting Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004)).  Here, the ALJ properly weighed the evidence and included the appropriate limitations in his hypothetical.

In the instant case, the ALJ asked the VE to assume a younger person with a high school degree in a simple, one or two step job, with occasional contact with the public, coworkers, and supervisors.  (Tr. 61).  The job was not to involve many changes and needed to be the same job day in and day out.  Id.  Based on this hypothetical, the VE opined Plaintiff would not be able to return to her past relevant work, but would be able to perform other jobs such as assembler, hand packager, and ticket taker.  (Tr. 24-25).

The ALJ found it significant that none of Plaintiff's mental health treatment providers suggested Plaintiff was unable to perform any work due to her mental impairments.  (Tr. 23).  However, the ALJ then considered and discussed the opinions of Dr. Knox, Dr. Harris, and Dr. Walls.  Specifically, the ALJ noted that Dr. Knox diagnosed Plaintiff with major depression and post-traumatic stress disorder and opined Plaintiff had moderate impairments in her ability to interact appropriately with the public, supervisors, and coworkers.  (Tr. 883, 885).  Dr. Knox suggested Plaintiff also had marked impairments in her ability to respond appropriately to usual work situations and changes in routine.  Id.  The ALJ found Dr. Knox's opinion of Plaintiff's limited social functioning deserved little weight because it was inconsistent with Plaintiff's daily activities.  (Tr. 23).  Dr. Knox suggested Plaintiff was moderately limited in her ability to socialize with others yet, as the ALJ noted, Plaintiff socialized with friends, family, and strangers in public.  Id.  The ALJ also emphasized that Plaintiff distributed religious

materials, regularly visited with her "spiritual" parents, went grocery shopping, and went to church at least two times per week.  Id.  The ALJ also found Dr. Knox's opinion internally inconsistent because Dr. Knox noted Plaintiff was able to converse normally with Dr. Knox and did not appear overly guarded or evasive.  Id.  The ALJ found this interaction was inconsistent with moderate or marked social function limitations.  Id. Additionally, the ALJ noted that Dr. Knox found Plaintiff "able to hear normal conversational speech, understand and produce speech, and had no significant issues in concentration and persistence."  Id.  Thus, after considering "a more complete history of [Plaintiff's] behavior, social interactions, and daily activities than that given to Dr. Knox," the ALJ found Plaintiff should be limited to only occasional contact with others. Id.  Additionally, the ALJ took into consideration Dr. Knox's limitations on Plaintiff's ability to cope with changes by noting in the hypothetical that the job should "not involve a lot of changes" and should "be the same one, two step job day in and day out."  (Tr. 61).  The undersigned finds the ALJ properly considered Dr. Knox's opinion in fashioning the hypothetical for the VE and rejected the limitations which were not supported by the record or were inconsistent.

Dr. Walls opined Plaintiff would have difficulty attending to a schedule, learning new tasks, and dealing with stress.  (Tr. 421-23).  The ALJ noted this opinion and properly discredited it, suggesting this part of Dr. Walls's opinion was "given little to no weight as there [was] not sufficient evidence other than [Plaintiff's] own subjective reporting that [Plaintiff] [was] incapable of keeping a schedule and/or routine."  (Tr. 23). The ALJ also suggested Dr. Walls's opinions indicated Plaintiff "was only mildly to moderately limited in related tasks, but was capable of understanding, performing, and

maintaining attention and concentration for simple tasks." Id. The ALJ gave this opinion significant weight because it was consistent with the "other evidence of the record regarding [Plaintiff's] mental health." Id. In propounding a hypothetical that included a simple, one or two step job and would "be the same one, two step job day in and day out," the ALJ properly accounted for Dr. Walls's opinion that Plaintiff was capable of understanding, performing, and maintaining attention and concentration for simple tasks. (Tr. 61). In restricting contact with the public, supervisors, and coworkers and limiting the amount of changes in the job, the ALJ accounted for Plaintiff's difficulty attending to a schedule and dealing with stress. Thus, the ALJ properly discussed and discredited the portions of Dr. Walls's opinion that were inconsistent with other evidence in the record while accounting for the portions that were consistent with the record.

Finally, with respect to Dr. Harris, the ALJ discussed Dr. Harris's opinion that Plaintiff had mild limitations in the functional areas of daily activities, moderate limitations in social functioning, and moderate limitations in concentration, persistence, or pace. (Tr. 22). Specifically, Dr. Harris found Plaintiff was moderately limited in understanding, remembering, and performing detailed instructions. Id. Plaintiff was also moderately limited in her ability to concentrate and maintain attention for extended periods of time. Id. Finally, Dr. Harris suggested Plaintiff would be moderately limited in her ability to perform at a consistent pace, accept instructions, respond appropriately to criticism from supervisors, and respond to changes in the work setting. Id.

In posing the hypothetical to the VE, the ALJ included these psychiatric RFC limitations. First, with respect to Plaintiff's problems with detailed instructions, the ALJ stressed Plaintiff was limited to performing simple tasks. Moreover, the ALJ included

Plaintiff's limitations in her ability to respond appropriately to changes in work setting by stating Plaintiff's job should "not involve a lot of changes" and should be "the same one or two step job day in and day out." (Tr. 61). Additionally, the hypothetical included the restrictions regarding Plaintiff's ability to interact with others as Plaintiff was restricted to "occasional contact with the public, supervisors, and coworkers." Id. Finally, with respect to the limitations on Plaintiff's concentration and pace, the ALJ limited Plaintiff to simple, repetitive tasks. If medical evidence affirmatively demonstrates that a plaintiff retains the ability to engage in simple, routine, or repetitive tasks, or unskilled work despite deficiencies in concentration, persistence, or pace, then including such restrictions in the hypothetical sufficiently accounts for the deficiencies. See Winschel v. Commissioner of Social Sec., 631 F.3d. 1176, 1180-81 (11th Cir. 2011). The ALJ assigned significant weight to the opinions of Dr. Walls and Dr. Knox regarding Plaintiff's ability to maintain attention and concentration for simple tasks. (Tr. 23). Dr. Walls noted Plaintiff had "coherent and goal directed thought process [with] intact attention and concentration." (Tr. 21). Dr. Walls further opined Plaintiff was "capable of maintaining attention and concentration for simple tasks." Id. Likewise, Dr. Knox opined Plaintiff "did not demonstrate cognitive impairments at the time of examination" and "had essentially unremarkable concentration." (Tr. 22). Dr. Harris opined Plaintiff was moderately limited in her ability to carry out detailed instructions but not significantly limited in her ability to carry out short and simple instructions. (Tr. 837). In Jarrett v. Commissioner of Social Sec., 422 F.App'x 869 (11th Cir. 2011), the claimant's non-examining consultant also found claimant was able to understand, remember and carry out simple tasks despite moderate limitation in her ability to maintain attention and

concentration for an extended period. Id. at 871. The ALJ restricted claimant's hypothetical to include only simple instructions and simple tasks. Id. The Eleventh Circuit found the restrictions sufficient because the medical evidence in the record demonstrated that claimant retained the ability to follow simple instructions and complete simple tasks. Id. at 872. Similarly, ALJ Davenport properly accounted for Plaintiff's limitations by restricting the hypothetical to "simple, one, two step jobs." (Tr. 61). Through discussion of the opinions of Plaintiff's examining physicians, ALJ Davenport used medical evidence to show Plaintiff retained the ability to engage in simple, routine, or repetitive tasks despite deficiencies in concentration, persistence, or pace. Thus, the hypothetical sufficiently accounted for Plaintiff's limitations as noted by Dr. Harris.

As noted above, Plaintiff contends the hypothetical presented to the VE did not include all of Plaintiff's psychiatric limitations, however, Plaintiff failed to specify any overlooked limitations. (Doc. 14). Plaintiff bears the burden of proving that she is disabled and is responsible for producing evidence in support of her claim. 20 C.F.R. §§ 404.1512(a), (c); 416.912(a), (c); Ellison, 355 F.3d at 1276. Here, Plaintiff has not met this burden and the Court is satisfied the ALJ properly included in the hypothetical all the limitations she found to be supported by substantial evidence.

Based on the evidence of record and the doctors' opinions, the ALJ concluded Plaintiff could perform simple work tasks in a low stress environment and have limited contact with the public. (Tr. 23). The ALJ included the appropriate limitations in her hypothetical to the VE. As such, the undersigned finds the hypothetical question the ALJ submitted to the VE properly represented Plaintiff's abilities considering Plaintiff's

20

physical and psychiatric limitations.

**IV.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**

pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk is directed to enter

judgment consistent with this opinion and thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this __29th__ day of February,
2012.

*Monte C. Richardson*
                        _____
                        MONTE C. RICHARDSON
                        UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record